## IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF FLORIDA
## PENSACOLA DIVISION

**JOSHUA BOWENS**
**DOC # R38019**,

      Plaintiff,

v.                                      Case No. 3:22-cv-3003-LC/HTC

**OFFICER GREENE, ET AL.,**

      Defendants.

_____/

## DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

**Greene** ("Defendant"), through counsel, hereby move for Summary

Judgment in his favor pursuant to Rule 56, Fed. R. Civ. P., and Rule 56.1, N.D.

Fla. Loc. R., and allege the following in support thereof:

I.     **Plaintiff fails to state a claim based on a theory that Defendant failed to Protect Plaintiff.**

II.    **Plaintiff fails to state a claim based on a theory that Defendant Failed to Intervene on Plaintiff's behalf.**

III.   **Defendant is entitled to Qualified Immunity as it relates to Plaintiff's claim for Failure to Intervene.**

## <u>PLAINTIFF'S CLAIMS AND PROCEDURAL HISTORY</u>

On February 15, 2022, Plaintiff filed his Complaint with this Court. *See* (Doc. 1).[1] Based on Plaintiff's Complaint, Defendants filed an Answer. (Doc. 19). Based on Defendants' Answer, this Court issued a Scheduling Order. *See* (Doc. 20). On December 6, 2022, Plaintiff filed a Motion to Reopen Discovery and Extend all Deadlines for 60 days, which Defendant responded to, and this Cour granted which was granted. (Docs. 29-31). On February 16, 2023, undersigned counsel appeared for Defendant, and on February 20, 2023, filed a Motion for Extension of Time of Discovery and MSJs, which was granted. (Docs. 34-36). On April 13, 2023, Defendant filed an unopposed Motion to Reopen Discovery and extend the MSJ deadline, which was granted. (Docs. 39-40).

On April 19, 2023, Defendant filed a Motion for Leave to depose inmate witnesses, which was granted. (Docs. 41-42). While Discovery was being conducted, the parties filed a Joint Notice of Voluntary Dismissal on behalf of former defendants Krystal Perkins ("Perkins") and James Oliver ("Oliver"). (Doc. 43). On May 19, 2023, the parties filed a Joint Motion for Extension of Time of Discovery and MSJ deadlines, which was granted by this Court. (Doc. 44-45). The latest MSJ deadline was set for June 30, 2023. (Doc. 45). On May 24, 2023, this Court issued an Order dismissing Perkins and Oliver. (Doc. 46).

---

[1] Each document filed in this case as part of the Electronic Case File will be referenced as "Doc." followed by the document number.

## STATEMENT OF MATERIAL FACTS

Joshua Bowens ("Plaintiff"), prisoner who was in the custody of the Florida Department of Corrections ("FDOC"). *See* (Defendant's Exhibit A). Plaintiff's allegations of injury are related to an incident which occurred on August 28, 2020. (Doc. 1 *generally*).

A. *Background to August 28, 2020, incident.*

Prior to the August 28, 2020, incident, Plaintiff shared a cell with a roommate named Alfred Hawkins, DC# N29688 ("Hawkins"). (Defendant's Exhibit B). Hawkins and Plaintiff shared a cell with one another until August 26, 2020, when Mr. Hawkins refused to allow Plaintiff back into the cell with him when Plaintiff returned to the cell after attending a mental health callout. *Id*. The reason why Hawkins refused to allow Plaintiff into the cell with him is because Plaintiff would regularly stand on the toilet in the cell, naked, and while Mr. Hawkins was present, and "gun"[2] at officers who walked by.[3] (Defendant's Exhibit

---

[2] "Gunning" is slang for when an inmate intentionally masturbates in the direction of an officer. (Defendant's Exhibit D). However, there is a difference between gunning and masturbation, in that gunning is not done for purposes of self-pleasure; rather, it is for purposes of intimidation and to assert dominance. *Id*.

[3] During his deposition, Hawkins continually referred to Plaintiff as a "bug" and that he didn't have "bug spray" so he had to "squash him." *See* (Defendant's Exhibit B). To translate for this court, a "bug" is an inmate who is "bugging out" or going crazy, and "bug spray" refers to pepper spray. According to Hawkins, as

B); (Defendant's Exhibit D). Apparently, Plaintiff would gun at officers so often that he was known as a "mad gunner." (Defendant's Exhibit D).

The method that Mr. Hawkins chose to get away from Plaintiff was to threaten to kill Plaintiff if he was placed into the cell with him again. (Defendant's Exhibit B); (Defendant's Exhibit F). Hawkins also brandished a weapon at the time. (Defendant's Exhibit E). Based on Hawkins actions, the officers who were escorting Plaintiff placed Plaintiff in a holding cell and told Hawkins to pack up his property. (Defendant's Exhibit B). Hawkins then packed up his property – along with most of Plaintiff's property – and was escorted and placed into a different cell. *Id*; (Defendant's Exhibit C). However, Hawkins had accidentally left some property in the cell with Plaintiff, including some legal work and a phone book with Hawkins' personal phone numbers. (Defendant's Exhibit B). After the incident, Hawkins received two disciplinary reports based on his actions. (Defendant's Exhibits E, F).

At some point before August 28, 2020, Plaintiff discovered the property left by Hawkins, including the phone book. (Defendant's Exhibit C). After discovering the property, Plaintiff started yelling at Hawkins indicating that he had found the

---

Hawkins did not have pepper spray, he had to "squash" him, and this term's definition should become obvious as the facts are elaborated on.

left property. *Id*. The two of them began yelling back and forth at each other about each of their respective property. *Id*.

B. *The August 28, 2020, incident.*

On August 28, 2020, Defendant came onto shift and looked at the inmate roster.[4] (Defendant's Exhibit G).[5] While looking at the inmate roster, Defendant determined that Hawkins was in the wrong cell, should be in the same cell as Hawkins, and that a different inmate was supposed to be housed alone in the cell that Hawkins was in. *Id*. Based on the housing discrepancy, Defendant approached Hawkins' cell and ordered him to gather his property and cuff up. *Id*.; (Defendant's Exhibit B). Hawkins complied, and he was cuffed in front of his body and was not shackled. (Defendant's Exhibits B, G). Though inmates would normally be fully retrained, and cuffed behind their back, Hawkins was cuffed in front because he

---

[4] Notably, Hawkins was served with copies of the DRs the morning of August 28, 2020. (Defendant's Exhibits E, F). Perkins testified that as a housing sergeant, she would not have been made aware of an unserved DR when determining housing assignments. (Defendant's Exhibit J). She also would only know about the DRs if Hawkins had been convicted of them. *Id*. Otherwise, there was no reason why Plaintiff and Hawkins should be housed together from her perspective. *Id*.

[5] Undersigned counsel apparently does not have transferrable versions of the depositions of Defendant Green and Perkins, (Defendant's Exhibits G, J), despite purchasing copies. Based on this issue, undersigned counsel will upload copies of the depositions as soon as they are obtained. The copies will be provided by a separate notice.

was being escorted a short distance by Defendant and was required to carry his own property. (Defendant's Exhibit G).

Defendant and Hawkins arrived outside of Plaintiff's cell at approximately 5:55 PM. (Defendant's Exhibits H, I). Plaintiff was cuffed behind his back, and Hawkins and Defendant waited outside of the cell for a short period of time while officer Moses Grier ("Grier") approached to assist with Hawkins being placed into the cell with Plaintiff. (Defendant's Exhibits H, I). During this time, Plaintiff and Hawkins yelled at each other, but neither party indicated that they should not be placed in the cell together. (Defendant's Exhibit I). Rather, Plaintiff indicated that he wanted to have Hawkins come into the cell, and Hawkins raised no objection to going inside the cell as well. (Defendant's Exhibits B, C, G).

After the arrival of Grier, the cell door was opened, and Hawkins threw his mattress inside. (Defendant's Exhibits H, I). Hawkins then stepped inside the cell, and the door was closed. (Defendant's Exhibits H, I). Defendant then looked down to open the food flap so he could uncuff Plaintiff and Hawkins; however, while he was doing so, Hawkins reached down into his curled-up mattress and pulled out a knife.[6] (Defendant's Exhibits H, I). Hawkins then proceeded to attack Plaintiff by stabbing him multiple times in the back. (Defendant's Exhibits H, I).

---

[6] Defendant testified that Hawkins' property was searched when he was pulled out of the cell. (Defendant's Exhibit G). However, searches are not guaranteed to find all contraband, and inmates know how to conceal it. *Id*. Additionally, the knife was

In response to seeing the attack by Hawkins on Plaintiff, and within 15 seconds of placing Hawkins in the cell, Defendant utilized pepper spray on the two parties and ordered them to stop fighting one another. (Defendant's Exhibits H, I). 15 seconds later, Defendant radioed for backup, which arrived over time. (Defendant's Exhibits H, I). While backup was continuing to arrive, Defendant utilized three additional applications of pepper spray on the parties in to get them to stop. (Defendant's Exhibits H, I). Eventually, after a period of about 6 minutes, the attack had ceased, and Hawkins was removed from the cell. (Defendant's Exhibits H, I). Plaintiff was later taken to the hospital for his injuries and received further medical attention based on the incident. (Defendant's Exhibit H).

## MEMORANDUM OF LAW

### Standard for Summary Judgment

Summary Judgment is proper if the pleadings and sworn statements show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corporation v. Catrett*, 477 U.S. 317, 322 (1986). The party moving for Summary Judgment bears the initial burden of demonstrating an absence of evidence to support the nonmoving party's case. *Celotex*, 477 U.S. at 322-23. Upon meeting this burden,

---

apparently Plaintiff's knife that had been taken when Hawkins took most of Plaintiff's property on August 26, 2020. (Defendant's Exhibit C).

the burden shifts to the nonmoving party to present evidentiary material demonstrating that a genuine issue of material fact exists. *Id*.

Applicable substantive law identifies those facts that are "material." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Factual issues must have a real basis in the record to be considered genuine and the nonmoving party must show more than a "metaphysical doubt" regarding the material facts. *Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986). The evidence and reasonable inferences drawn from the evidence are viewed in the light most favorable to the nonmoving party. *Watkins v. Ford Motor Co.*, 190 F.3d 1213, 1216 (11th Cir. 1999).

Although all reasonable inferences are made in favor of the nonmoving party, a court need not permit a case to go to a jury when the inferences drawn from the evidence and upon which the nonmoving party relies are 'implausible.' *Cuesta v. School Bd. of Miami-Dade County*, 285 F.3d 962, 970 (11th Cir. 2002) (citations omitted). A mere "scintilla" of evidence in support of the nonmoving party's position is not sufficient; there must be evidence upon which a jury could reasonably find for the nonmoving party. *Anderson*, 477 U.S. at 252. *See also Matsushita*, 475 U.S. at 587 (there is no genuine issue for trial if record taken as a whole would not lead a rational trier of fact to find in favor of non-moving party). In other words, Summary Judgment is warranted against a nonmoving party who

"fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.

To create an issue of fact for trial sufficient to defeat a well-supported Summary Judgment motion, the non-movant's evidentiary material must consist of more than conclusory, uncorroborated allegations from an affidavit. *West v. Higgins*, 346 F. App'x 423, 425 (11th Cir. 2009) (per curiam) (unreported op.) (citing *Earley v. Champion Int'l Corp.*, 907 F.2d 1077, 1081 (11th Cir. 1990)). For the factual issues to be genuine, they must have a real basis in the record, cannot be based merely on "information and belief" or unsupported factual allegations. *Earley*, 907 F.2d at 1081. Further, if "two parties tell different stories [where one] is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007). If a fact cannot be presented in a form that would be admissible in evidence, it cannot be used for purposes of Summary Judgment. *Macuba v. Deboer*, 193 F.3d 1316, 1322 (11th Cir. 1999). *See also* Rule 56(c), Fed. R. Civ. P.

In *McMillian v. Johnson*, 88 F.3d 1573, 1584 (11th Cir. 1996), the Eleventh Circuit clarified its earlier rulings on this point by indicating that their cases applying *Celotex* read *Celotex* "as simply allowing *otherwise admissible evidence*

to be submitted in inadmissible form at the summary judgment stage, though at trial it must be submitted in admissible form." The Court continues to apply this principle. *See McCaskill v. Ray*, 279 Fed.Appx. 913, 914 (11th Cir. 2008). However, the court was clear that "potential impeachment evidence [although admissible] . . . may not be used to create a genuine issue of material fact for trial" that would defeat a Motion for Summary Judgment. *McMillian*, 88 F.3d at 1584.

## I.    Plaintiff fails to state a claim based on a theory that Defendant failed to Protect Plaintiff.

To state a cause of action for failure to protect, Plaintiff must demonstrate three elements: (1) Plaintiff must show that he was "incarcerated under conditions posing a substantial risk of serious harm;" (2) that Defendant "'[had] a sufficiently culpable statement of mind,' amounting to 'deliberate indifference;'" and (3) that the constitutional violation caused Plaintiff's injuries. *Cox v. Nobles*, 15 F. 4th 1350, 1357-58 (11th Cir. 2021). In this case, for purposes of this Motion only, Defendant does not dispute that Plaintiff likely satisfies the first element of a failure to protect claim. However, Plaintiff still must satisfy the second and third elements of his claim. *Cox*, 15 F. 4th at 1358.

"Deliberate indifferent exists when a prison official 'knows of and disregards an excessive risk to inmate health or safety.'" *Cox*, 15 F. 4th at 1358 (citing *Farmer v. Brennan*, 511 U.S. 825, 832 (1994)). "Deliberate indifferent has two components: one subjective and one objective." *Cox*, 15 F. 4th at 1358 (citing

*Mosely v. Zachery*, 966 F. 3d 1265, 1270 (11th Cir. 2020)). Plaintiff must establish "both that the [1] the defendant actually (subjectively) knew that [Plaintiff] faced a substantial risk of serious harm and that [2] the defendant disregarded that known risk by failing to respond to it in an (objectively) reasonable manner." *Cox*, 15 F. 4th at 1358., *See also Terry v. Baily*, 376 Fed. App'x 894, 895-96 (11th Cir. 2010) (analyzing a failure to protect claim in the context of an inmate-on-inmate attack between cellmates). The 11th Circuit has "been at pains to emphasize that 'the deliberate indifferent standard . . . is far more onerous than normal tort-based standards of conduct sounding in negligence,' and is in fact akin to 'subjective recklessness as used in the criminal law.'" *Hoffer v. Secretary, Florida Department of Corrections*, 973 F. 3d 1263, 1271 (11th Cir. 2020).

In this case, though the parties disagree as to whether Plaintiff informed Defendant of a risk of harm, Plaintiff fails to meet the standard required of him. First, Defendant had just come onto shift. (Defendant's Exhibit C). In just coming onto shift, he reviewed the inmate housing roster and determined there was an issue with the housing location of Hawkins. *Id.*; (Defendant's Exhibit J). He determined that he needed to remedy the issue, and there was no other information indicating that he should be concerned with conforming with the housing roster. (Defendant's Exhibit C). In moving Hawkins into the cell with Plaintiff, Defendant relied on the roster being correct and there being no issues with it. *Id*. Defendant

was not aware of the Disciplinary Reports Hawkins had received days prior. *Id*. Prior to arriving at Plaintiff's cell, there was no reason for Defendant to believe there was any issue with the movement of Hawkins back into the cell with Plaintiff.

Second, upon arriving with Hawkins at Plaintiff's cell, though Plaintiff alleges he told Defendant that Hawkins should not be placed in the cell with him, there was no reason for Defendant to credit these statements, even if they occurred. A witness in the cell next door to Plaintiff states that he was explicitly telling Plaintiff not to allow Hawkins into the cell with him, but that Plaintiff disregarded this suggestion, and indicated he wanted Hawkins to enter the cell with him. (Defendant's Exhibit C). Hawkins indicates that Plaintiff wanted him to enter the cell and did not object to the placement. (Defendant's Exhibit B). Hawkins even suggests that Plaintiff could have taken actions, like he had done days prior on August 26, 2020, but Plaintiff did nothing of the sort. *Id*.

It is doubtful that Plaintiff relayed any concern to Defendant, especially when an uninvolved and unbiased witness indicates that he wanted Hawkins to enter the cell. The reason why Plaintiff wanted Hawkins to enter to cell with him stems from Hawkins taking his property. (Defendant's Exhibits B, C). Hawkins likewise wanted to enter the cell to regain his property that was left behind. The two individuals wanted to fight one another to avenge the wrongs each other had

12

suffered. To accomplish this goal, neither Plaintiff nor Hawkins would have told Defendant about their intentions.

It is unfortunate that Plaintiff was injured because of this incident. However, Plaintiff likewise fails to demonstrate the injury was caused by Defendant. Defendant had no reason to believe that Plaintiff was in danger, and it was not Defendant's actions that lead to Plaintiff being injured: it was the actions of Hawkins. Hawkins is the attacker in this situation, and in all honesty, should be a party in this suit. However, Plaintiff has deliberately chosen not to sue Hawkins. (Defendant's Exhibit K).

As Defendant did not have the requisite culpable state of mind, Defendant did not fail to protect Plaintiff and Plaintiff's claim of failure to protect should be dismissed.

## II.  Plaintiff fails to state a claim based on a theory that Defendant Failed to Intervene on Plaintiff's behalf.

"Prison correctional officers may be held directly liable under § 1983 if they fail or refuse to intervene when a constitutional violation occurs in their presence." *Terry*, 376 Fed. App'x at 896 (citing *Ensly v. Soper*, 142 F. 3d 1402, 1407 (11th Cir. 1998)). "[A]n officer who is present at the scene and who fails to take reasonable steps to protect the victim . . . can be held personally liable for his nonfeasance." *Skritch v. Thornton*, 280 F3d 1295, 1301 (11th Cir. 2002).

13

In this case, Plaintiff alleges that Defendant did nothing to protect him from Hawkins' attack until after the attack ended. (Doc. 1 at 10-11). This allegation is rebutted by undisputed video evidence, as Defendant can be seen on video applying pepper spray within 15 seconds of the attack. (Defendant's Exhibits H, I). *See also* (Doc. 1 at 11) (demonstrating that Plaintiff acknowledged that Defendant acted, but conveniently left out of how quickly Defendant acted). Defendant took further action after 30 seconds and called for backup. (Defendant's Exhibits H, I). Even after calling for backup, Defendant then applied 3 more applications of pepper spray to Plaintiff and Hawkins to get them to stop. (Defendant's Exhibits H, I). During this entire period, Defendant ordered Plaintiff and Hawkins to stop fighting, but they both refused to do so for 6 minutes. (Defendant's Exhibits H, I). By then, additional backup had arrived, and Hawkins voluntarily submitted to restraints. (Defendant's Exhibits H, I). Defendant's actions clearly demonstrate action intended to intervene on Plaintiff's behalf in a reasonable amount of time and manner. As a result, Plaintiff has failed to state a cause of action against Defendant for failure to intervene.

## III.   Defendant is entitled to Qualified Immunity as it relates to Plaintiff's claim for Failure to Intervene.

In this case, it is clear Defendant is entitled to Qualified Immunity on Plaintiff's Constitutional claims related to an allegation that Defendant failed to intervene on Plaintiff's behalf and should be dismissed from further litigation in

this case. Defendants are entitled to Qualified Immunity as he did not violate Plaintiff's constitutional rights, and further, Defendants did not violate any "clearly established law."

Qualified Immunity offers complete protection for government officials sued in their individual capacities who act within their discretionary authority. *Pearson v. Callahan*, 555 U.S. 223 (2009). Officials are entitled to Qualified Immunity "unless (1) they violated a federal statutory or constitutional right, and (2) the unlawfulness of their conduct was 'clearly established at the time.'" *District of Columbia v. Wesby*, 138 S. Ct. 577, 589 (January 22, 2018) (citing *Reichie*, 566 U.S. at 664). Courts are not required to address the two prongs of this test in any particular order. *Pearson*, 555 U.S. 223.

"'Clearly established' means that, at the time of the officer's conduct, the law was 'sufficiently clear' that every 'reasonable official would understand that what he is doing' is unlawful." *Wesby*, 138 S. Ct. at 589 (citing *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011)). *See also Santana v. Miami-Dade County*, 688 Fed. App'x 763, 770 (11th Cir. 2017) (stating that the circumstances must be viewed "from the perspective of a reasonable officer on the scene, rather than with the 20/20 hindsight. [While] allow[ing] for the fact that officers are required to make 'split-second judgments – in circumstances that are tense, uncertain, and rapidly evolving – about the amount of force that is necessary in particular situation.") In

other words, existing law must have placed the constitutionality of the officer's conduct "beyond debate." *Wesby*, 138 S. Ct. at 589 (citing *al-Kidd*, 563 U.S. at 741). The "demanding standard protects 'all but the plainly incompetent or those who knowingly violate the law.'" *Wesby*, 138 S. Ct. at 589 (citing *Malley v. Briggs*, 475 U.S. 335, 341 (1986)).

"To be clearly established, a legal principle must have a sufficiently clear foundation in then-existing precedent." *Wesby*, 138 S. Ct. at 589. "The rule must be 'settled law,' which means it is dictated by 'controlling authority' or 'a robust consensus of cases of persuasive authority.'" *Id*. (internal citations removed). "It is not enough that the rule is suggested by then-existing precedent." *Id*. "The precedent must be clear enough that every reasonable official would interpret it to establish the particular rule the plaintiff seeks to apply." *Id*. "Otherwise, the rule is not one that 'every reasonable official' would know." *Id*.

Furthermore, when considering a defense of Qualified Immunity, courts must only consider the facts that were knowable to the Defendant. *White v. Pauly*, 137 S. Ct. 548, 550 (2017). The United States Supreme Court has recently reversed lower courts in several decisions, and in each decision the Court has expressed the concern that clearly established law should not be defined "at a high level of generality." *Mullenix v. Luna*, 136 S. Ct. 305, 308 (2015). The dispositive question is "whether the violative nature of *particular* conduct is clearly established." *Id*.

16

(citing *al-Kidd*, 563 U.S. 731 at 741 (2011)). *See e.g. Mullenix*, 136 S. Ct. 305 (The United States Supreme Court determined that an officer had acted reasonably under circumstances involving a clear violation of the general rule that deadly force may not be used "against a fleeing felon who does not pose a significant threat of harm to the officer or others."). "The clearly established law must be 'particularized to the facts of the case. Otherwise, 'plaintiffs would be able to convert the rule of qualified immunity . . . into a rule of virtually unqualified liability simply by alleging violation of extremely abstract rights." *White*, 137 S. Ct. at 552.

In this case, though Defendant did not violate Plaintiff's constitutional rights. Defendant acted in an reasonable and quick manner to protect Plaintiff. *See* Section II, *supra*.

Alternatively, if this Court somehow finds that Defendant's 15 second response time somehow constituted a Constitutional violation, there has not been a violation of "clearly established law" which would allow for liability. The evidence in this case is clear: Defendant acted within 15 seconds of the attack beginning on Plaintiff. (Defendant's Exhibits H, I). If Defendant's 15 response time somehow constituted a violation of Plaintiff's Constitutional rights, there is no clearly established law which would demonstrate that Defendant is liable. The law surrounding failure to intervene by officers largely involves a third-party office

failing to intervene in excessive force, not a failure to intervene by an officer on behalf of an inmate who has been attacked by another inmate. *See e.g. Ensly*, 142 F. 3d at 1407; *Skritch*, 280 F3d at 1301. There is no way that Defendant could have been put on notice that responding to the attack on Plaintiff within 15 seconds violates Plaintiff's civil rights.

Additionally, even if Defendant was mistaken in believing a 15 second response time was appropriate, Defendant still would be entitled to Qualified Immunity. In an Opinion issued by the United States Supreme Court, the Court overturned a decision by the DC Circuit Court which found that the officers in the case were not entitled to Qualified Immunity. *Wesby*, 138 S. Ct. 577. In the case, the Court addressed the decision by the DC Circuit[7] and specifically stated that "[e]ven assuming the officers lacked actual probable cause to arrest the partygoers, the officers are entitled to qualified immunity because they 'reasonably but mistakenly conclude[d] that probable cause [wa]s present.'" *Id*. at 591. In making such a finding, the Court belied the fact that there was not "a single precedent – much less a controlling case or robust consensus of cases – finding a Fourth Amendment violation 'under similar circumstances.'" *Id*. And the Court went on to

---

[7] Prior to reaching the Qualified Immunity issue, a majority of the Court found that probable cause did in fact exist and that the Appellate Court had made an incorrect finding. However, even though the probable cause issue would have resolved the case, the Court specifically addressed Qualified Immunity due to the clearly erroneous ruling on the issue by the DC Circuit. *See Wesby*, 138 S. Ct. at 589.

say that the case was not an "'obvious case' where a 'body of relevant case law' is not needed." *Id*. After making such a finding, the Court overturned a judgment of nearly $1 million against the officers. *Id*.

Like in *Wesby*, even if Defendant was mistaken in believing his response time was appropriate, Defendant would still be entitled to Qualified Immunity. There is not a "controlling or robust consensus of cases" demonstrating the unlawfulness of Defendants' actions. *Wesby*, 138 S. Ct. at 591. Nor is there an "obvious case" which would demonstrate such a precedent. *Id*. at 591. In fact, based on Florida statutory law, and decisions from this Court, the 11th Circuit, and the U.S. Supreme Court, there would seem to be a "controlling or robust consensus of cases" demonstrating that Defendant's actions were in fact lawful. As a result, Defendant should be entitled to Qualified Immunity.

## CONCLUSION

**WHEREFORE**, for the foregoing reasons, Defendant respectfully requests this Court enter Summary Judgment in his favor.

Respectfully Submitted,

**ASHLEY MOODY**
**ATTORNEY GENERAL**
Office of the Attorney General
The Capitol PL-01
Tallahassee, Florida 32399-1050
Telephone: (850) 414-3300
Facsimile: (850) 488-4872

/s/ Erik Kverne
Erik Kverne
Assistant Attorney General
Florida Bar No.: 99829
Erik.Kverne@myfloridalegal.com

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a true and correct copy of the foregoing

*Defendant's Motion for Summary Judgment* was e-filed electronically and served

electronically on Plaintiff's counsel of record through CM/ECF on June 30, 2023.

/s/ Erik Kverne
Erik Kverne
Assistant Attorney General
Florida Bar No.: 99829
Erik.Kverne@myfloridalegal.com

## CERTIFICATE OF COMPLIANCE WITH WORD LIMIT

**I HEREBY CERTIFY** that the above Motion totals **1,508** words and that the Supporting Memoranda required by N.D. Fla. Loc. R. 7.1(E) contains **3,010** words, totaling **4,518** words, not exceeding 8,000 total word maximum created by N.D. Fla. Loc. R. 7.1(F).

/s/ Erik Kverne
Erik Kverne
Assistant Attorney General
Florida Bar No. 99829
Erik.Kverne@myfloridalegal.com