UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

JOSHUA JACQUES BOWENS,

    Plaintiff,

v.                                                                              Case No. 3:22cv3003-LC-HTC

OFFICER SHAUNDERRICK
GREENE,

    Defendant.
_____/

REPORT AND RECOMMENDATION

Plaintiff Joshua Jacques Bowens, a prisoner proceeding under 42 U.S.C. § 1983, alleges Defendant Shaunderrick Greene violated his Eighth Amendment rights by failing to protect him from an attack by Alfred Hawkins, a fellow prisoner, and by failing to intervene after the attack began. ECF Doc. 1. Defendant has moved for summary judgment, arguing he was not aware of the risk posed by Hawkins and responded appropriately during the attack. ECF Docs. 47 & 48. Plaintiff responded in opposition to the motion, ECF Doc. 53, and Defendant filed a reply, ECF Doc. 54. After reviewing the parties' submissions, the record, and the relevant law, the undersigned recommends the motion for summary judgment: (1) be GRANTED as to the failure to intervene claim; and (2) be DENIED as to the failure protect claim, as a genuine dispute of material fact exists as to whether Defendant knew Hawkins

posed a substantial risk of serious harm to Plaintiff when Defendant placed Hawkins in Plaintiff's cell.

## I. Legal Standard

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). An issue of fact is "material" if it might affect the outcome of the case under the governing law, and it is "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Id.* The Court must review the evidence, and all factual inferences reasonably drawn from the evidence, "in the light most favorable to the non-moving party." *Hairston v. Gainesville Sun Publ'g Co.*, 9 F.3d 913, 918 (11th Cir. 1993) (citation omitted). "If reasonable minds could differ on the inferences arising from undisputed facts, then a court should deny summary judgment." *Miranda v. B & B Cash Grocery Store, Inc.,* 975 F.2d 1518, 1534 (11th Cir. 1992) (citation omitted).

## II. Facts

The evidence, viewed in the light most favorable to Plaintiff, reveals the following.[1] In August 2020, Plaintiff shared cell F-3119 with inmate Alfred Hawkins at Santa Rosa Correctional Institution. ECF Doc. 47-6 at 2. When Plaintiff returned from a mental health callout on the morning of August 26, 2020, Hawkins refused to let Plaintiff into the cell; Hawkins told the escorting officers he would kill Plaintiff if Plaintiff was placed back in the cell. ECF Doc. 47-6 at 2; ECF Doc. 53-1 at 6. Prison officials subsequently moved Hawkins to a different cell and placed Plaintiff back in cell F-3119. ECF Doc. 53-1 at 6. At some point during the movement of the inmates, officers searched cell F-3119 and discovered a "homemade weapon, made from metal sharpened to a point," in Hawkins' property. ECF Doc. 47-5 at 2. In addition, both inmates ended up with some of each other's property after the transfer. ECF Doc. 47-2 at 11-14; ECF Doc. 53-1 at 6.

On August 28, 2020, Defendant Officer Greene approached Plaintiff's cell and told him "since you want to run your mouth, you want to talk shit all the time," Greene would move Hawkins back in Plaintiff's cell.[2] ECF Doc. 53-1 at 7. Plaintiff informed Greene of what happened on August 26, but Greene told Plaintiff "to man

---

[1] *See Swint v. City of Wadley, Ala.*, 51 F.3d 988, 992 (11th Cir. 1995) (noting that what are stated as "facts" for purposes of ruling on a motion for summary judgment may not be the actual facts).
[2] Before August 28, Plaintiff had multiple verbal confrontations with Greene. ECF Doc. 53-1 at 4-5.

Case No. 3:22cv3003-LC-HTC

up" and "he don't want to hear it, he was moving [Hawkins] back." *Id.* Greene went and spoke with Hawkins, then brought him to the front of Plaintiff's cell. *Id.* Plaintiff again advised Greene he could not be housed with Hawkins because Hawkins had threatened to stab and kill him. *Id.* Johnny Hill, an inmate who resided in a cell near Plaintiff's, overheard Plaintiff say "he didn't want to let [Hawkins] come back in the cell because … Hawkins was saying he was going to kill [Plaintiff] and [Plaintiff] was saying he was in fear of his life." ECF Doc. 53-3 at 14. Hill also says he heard Greene tell Plaintiff that if he refused to let Hawkins in the cell, Greene would write Plaintiff a disciplinary report and spray him with chemical agents. *Id.* at 14-15, 18.

Greene then handcuffed both Plaintiff and Hawkins. ECF Doc. 53-1 at 7-8. Although Hawkins was initially handcuffed behind his back, Greene "allowed … Hawkins to … flip his cuffs from the back to the front." *Id.* at 8. Plaintiff was handcuffed behind his back. *Id.* at 8-9.

Greene opened Plaintiff's cell door and Hawkins tossed his mattress in the cell. *Id.* at 9. As Hawkins entered the cell, "he was removing a homemade knife from his pants." *Id.* Hawkins immediately began to attack Plaintiff. *Id.* Greene closed the cell door "to isolate and contain the incident" and ordered Hawkins to discard the weapon and lie on the ground. ECF Doc. 47-8 at 7. When Hawkins failed to comply, Greene sprayed chemical agents into the cell through the handcuff

port; Hawkins, however, continued to attack Plaintiff, ultimately stabbing him six times. *Id.*; ECF Doc. 53-1 at 9-11. After four canisters of chemical agents had been sprayed into the cell, Hawkins complied with an order to "drop the weapon" by handing the weapon to officers through the handcuff port. *Id.* at 11; ECF Doc. 47-8 at 7-8. Plaintiff and Hawkins were removed from the cell to receive decontamination showers and medical treatment.[3] ECF Doc. 53-1 at 11-12.

### III. Video Evidence

The fixed wing video footage begins at approximately 5:54 p.m. and shows Defendant Greene and inmate Hawkins standing outside Plaintiff's cell. Several voices can be heard on the video but what is said is largely unintelligible. A mattress and several bags are on the ground by Hawkins' feet. Greene opens the cell door at 5:55:22 p.m.; Hawkins tosses his mattress into the cell and enters at 5:55:30 p.m., with Greene closing the door immediately thereafter. About fifteen to sixteen seconds later, Greene opens the handcuff port and leans down, presumably to apply the first round of chemical agents. At 5:56:00, Greene is seen calling for backup over his radio. Greene appears to apply a second round of chemical agents at 5:56:52 p.m. By 5:57:25 p.m. at least six correctional officers are in the vicinity of Plaintiff's

---

[3] Defendant disputes several facts recited herein. He maintains: (1) he moved Hawkins into Plaintiff's cell because the inmate housing roster indicated that was Hawkins' proper housing assignment; (2) neither Plaintiff nor Hawkins objected to being placed in the cell together; (3) Hawkins was handcuffed in the front rather than the back to allow Hawkins to carry his property between cells; and (4) Hawkins removed the weapon from his mattress, not his pants.

Case No. 3:22cv3003-LC-HTC

cell. The cell door is opened at 6:02:33 p.m. and either Hawkins or Plaintiff is removed from the cell.

## IV. Discussion

### A. Failure to Protect

"[U]nder the Eighth Amendment, 'prison officials have a duty to protect prisoners from violence at the hands of other prisoners.'" *Caldwell v. Warden, FCI Talladega*, 748 F.3d 1090, 1099 (11th Cir. 2014) (quoting *Farmer v. Brennan*, 511 U.S. 825, 833 (1994)). To make a failure to protect claim under the Eighth Amendment, a plaintiff must establish: "(1) a substantial risk of serious harm; (2) the defendants' deliberate indifference to that risk; and (3) causation." *Hale v. Tallapoosa Cnty.*, 50 F.3d 1579, 1582 (11th Cir. 1995) (citations omitted). Deliberate indifference has two components: one subjective and one objective. *Cox v. Nobles*, 15 F.4th 1350, 1358 (11th Cir. 2021). A prisoner must establish: (1) the defendant actually (subjectively) knew the prisoner faced a substantial risk of serious harm; and (2) the defendant disregarded that known risk by failing to respond to it in an (objectively) reasonable manner. *Id.*

Here, Defendant Greene claims he relied on the inmate housing roster when he moved Hawkins, he did not know Hawkins posed a substantial risk of serious harm to Plaintiff, and Hawkins, not Greene, caused Plaintiff's injuries. However, Plaintiff's evidence is sufficient for a factfinder to conclude Greene acted with

deliberate indifference and caused Plaintiff's injuries. On August 26, Hawkins was moved to a different cell after threatening to kill Plaintiff. ECF Docs. 47-5, 47-6. On August 28, Plaintiff states he had a conversation with Greene during which Greene indicated he would move Hawkins back into Plaintiff's cell because Plaintiff liked to "run his mouth." ECF Doc. 53-1 at 7. As Greene prepared to move Hawkins into Plaintiff's cell, Plaintiff told Greene he could not be housed with Hawkins and about the events of August 26—namely, that Plaintiff and Hawkins had been separated because Hawkins threatened to kill Plaintiff.[4] *Id.* at 7, 14. Nevertheless, Greene did not keep the inmates separated until he investigated the threats or what happened on August 26. *Cf. Mosley v. Zachery*, 966 F.3d 1265, 1271-72 (11th Cir. 2020) ("[B]ased on what the prison official knows about the prisoners, their history, the threat, and the structure and administration of the prison, it is not an unreasonable response to see that the prisoners are separated and supervised while the official investigates the threat and looks into her options.").

---

[4] Greene suggests Plaintiff's testimony that he told Greene about Hawkins' threats is self-serving and should be rejected. ECF Doc. 54. However, "for purposes of summary judgment, there is nothing inherently wrong with 'self-serving testimony,' and it may not be disregarded by the district court in determining whether there is a genuine dispute of fact on a material issue in the case." *Reid v. Sec'y, Fla. Dep't of Corr.*, 486 F. App'x 848, 852 (11th Cir. 2012). Greene's motion also argues that even if Plaintiff told Greene about Hawkins' threats, Greene would have no reason to credit Plaintiff's statements. ECF Doc. 47 at 12. However, in his deposition, Greene admitted that if Plaintiff had told him about the threats, he "wouldn't be able to move … Hawkins [into the] cell with [Plaintiff]." ECF Doc. 48-1 at 30-31.

Case No. 3:22cv3003-LC-HTC

Instead, Greene allowed Hawkins to enter the cell while he was handcuffed in the front and Plaintiff was handcuffed behind his back. ECF Doc. 53-1 at 8-9. Taken together, this evidence is sufficient for a jury to find: (1) Greene knew Hawkins posed a substantial risk of serious harm to Plaintiff; (2) Greene unreasonably disregarded that risk by allowing Hawkins into Plaintiff's cell; and (3) that disregard caused the attack and Plaintiff's injuries. *See Nelson v. CorrectHealth Muscogee, LLC*, — F. Supp. 3d —, 2022 WL 17417983, at *5 (M.D. Ga. Dec. 5, 2022) ("A plaintiff can establish a substantial risk of serious harm by showing that jail officers knew of a specific threat against an inmate."). Thus, Greene is not entitled to summary judgment on Plaintiff's failure to protect claim.

### B. Failure to Intervene

Under the Eighth Amendment, a prison official can be liable for failing to take reasonable steps to protect an inmate from an ongoing assault by another inmate. *Ledlow v. Givens*, 500 F. App'x 910, 914 (11th Cir. 2012) (citation omitted). "The plaintiff has the burden to demonstrate that the defendant was in a position to intervene but failed to do so." *Id.* (citation omitted).

Here, the evidence indicates Defendant Greene: (1) saw Hawkins produce a weapon and begin to attack Plaintiff, after which Greene closed the cell door "to

isolate and contain the incident,"[5] ECF Doc. 47-8 at 7; (2) ordered Hawkins to discard the weapon, stop the attack, and lie on the ground, *id.*; (3) sprayed chemical agents into the cell and called for backup within thirty seconds of Hawkins entering the cell, ECF Doc. 47-9 (fixed wing video footage); ECF Doc. 48-1 at 38; and (4) utilized three additional applications of chemical agents, ECF Doc. 47-8 at 7-8.

Although Plaintiff faults Greene for not acting quicker, ECF Doc. 53 at 14, he does not articulate what actions Greene should have taken and when he should have taken them. It was not unreasonable for Greene to close the cell door and contain the attack, as leaving the door open could have allowed Hawkins to exit and use the weapon on officers; and Greene was not required to rush into the cell and place his own safety at risk. *See Prosser v. Ross*, 70 F.3d 1005, 1008 (8th Cir. 1995) ("[P]rison guards have no constitutional duty to intervene in the armed assault of one inmate upon another when intervention would place the guards in danger of physical harm."); *Anquavious Seals v. Marcus*, 2013 WL 656873, at *8 (M.D. Ga. Jan. 25, 2013), *report and recommendation adopted by* 2013 WL 663579 (M.D. Ga. Feb. 22, 2013) ("Regardless of the presence or absence of a weapon in the hands of the attacking inmates, 'no rule of constitutional law requires unarmed officials to

---

[5] Considering the video footage shows Greene closing the cell door as Hawkins steps through the doorway, it is unclear whether Greene could have witnessed the start of the attack before beginning to close the door. However, Plaintiff's response seems to adopt this version of events, so the undersigned does so as well for purposes of this Report and Recommendation. *See* ECF Doc. 53 at 14 (noting Greene "admit[ed] that he saw the knife in Hawkins' hands before closing the cell door" and "clos[ed] the cell door and lock[ed] the assailant in the cell with his victim").

Case No. 3:22cv3003-LC-HTC

endanger their own safety in order to protect a prison inmate threatened with physical violence.'") (quoting *Longoria v. Texas*, 473 F.3d 586, 594 (5th Cir. 2006)).

Within thirty seconds of Hawkins entering Plaintiff's cell, Greene had verbally ordered Hawkins to cease his attack, sprayed chemical agents into the cell to get him to do so,[6] and called for backup. The undersigned concludes the evidence does not show Greene acted unreasonably after the attack began and, thus, he is entitled to summary judgment on Plaintiff's failure to intervene claim. *See Sanford v. Toby*, 2013 WL 4787143, at *8 (S.D. Ga. Sept. 6, 2013) ("Alerted to the fact that one of the inmates was armed with a dangerous weapon, it was reasonable for purposes of the Eighth Amendment for [the defendant] to continue verbally ordering the inmates to separate until a shield could be obtained.").

Furthermore, Plaintiff has not rebutted Greene's qualified immunity defense. Qualified immunity shields government officials performing discretionary functions from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Myrick v. Fulton Cnty., Ga.*, 69 F. 4th 1277, 1300 (11th Cir. 2023). "Once the qualified immunity defense is raised, plaintiffs bear the burden of showing

---

[6] Plaintiff's response suggests Plaintiff "testified that Greene aimed the chemical agents spray at him and not at Hawkins so that he was blinded as well as being handcuffed in back as Hawkins was stabbing him." ECF Doc. 53 at 7. However, while Plaintiff testified he was hit by the chemical agents and was trying to prevent it from affecting his eyes, he never specifically testified that Greene aimed the spray at him. ECF Doc. 53-1 at 11. And, naturally, Plaintiff indicated he was moving around the cell to try to protect himself during the attack. *Id.* at 10.

Case No. 3:22cv3003-LC-HTC

that the federal rights allegedly violated were clearly established." *Foy v. Holston*, 94 F.3d 1528, 1532 (11th Cir. 1996) (citation omitted). "Plaintiffs can show that a constitutional right was clearly established in three ways: (1) citing case law with indistinguishable facts that clearly establishes the constitutional right; (2) pointing to a broad statement of principle within the Constitution, statute, or case law that clearly establishes the constitutional right; or (3) alleging conduct so egregious that a constitutional right was clearly violated, even in the total absence of case law." *Myrick*, 69 F. 4th at 1300.

    Plaintiff argues "[t]he law of the Eleventh Circuit unambiguously precludes a defense of qualified immunity in cases where a plaintiff alleges an Eighth Amendment violation and offers evidence sufficient to survive a motion for summary judgment." ECF Doc. 53 at 16. However, the case Plaintiff cites in support of this argument involved the use of excessive force by prison guards. *See Skrtich v. Thornton*, 280 F.3d 1295, 1301 (11th Cir. 2002) ("[A] defense of qualified immunity is not available in cases alleging excessive force in violation of the Eighth Amendment, because the use of force 'maliciously and sadistically to cause harm' is clearly established to be a violation of the Constitution by the Supreme Court decisions in *Hudson* and *Whitley*.") (citation omitted). As discussed in the following section, here, the Court is considering whether Defendant Greene's efforts to end

Hawkins' attack were constitutionally inadequate, not whether Greene used excessive force.

Thus, Plaintiff has not met his burden of showing the actions Greene took after Hawkins' attack began violated clearly established rights. And the undersigned's own review of the relevant caselaw does not indicate Greene would have known that the minimal, if any, delay between when he saw the attack and when he ordered Hawkins to cease his conduct, applied chemical agents, and called for backup, was unlawful. *See Johnson v. Lang*, 2022 WL 2734421, at *5 (11th Cir. July 14, 2022) ("*a significant amount of time* elapsing between a prisoner's physical assault and the defendants' intervention may demonstrate that the defendants were subjectively aware of the risk of substantial injury or responded to the risk in an objectively unreasonable way") (cleaned up) (emphasis added) (citation omitted); *cf. Woodyard v. Ala. Dep't of Corr.*, 700 F. App'x 927, 934 (11th Cir. 2017) (concluding prison guard was not entitled to qualified immunity for failure to intervene claim because precedent made it clear "the Constitution requires that prison officials take reasonable measures to protect the safety of the inmates" and "[a]ny reasonable officer should have known that he could not, in keeping with that standard, delay for *five minutes* taking any action while one inmate assaulted another one") (emphasis added). Thus, Greene is entitled to qualified immunity on the failure to intervene claim. *See Dist. of Columbia v. Wesby*, 138 S. Ct. 577, 589

(2018) ("'Clearly established' means that at the time of the officer's conduct, the law was 'sufficiently clear that every reasonable official would understand that what he is doing' is unlawful.") (citation omitted).

### C. "Party to the Stabbing"

Plaintiff's response to Defendant's motion for summary judgment suggests "a jury could find that Defendant, in addition to his failure to intervene and protect, was a party to the stabbing itself." Apparently, Plaintiff believes Defendant Greene may be liable for excessive force through use of a proxy, Hawkins. Plaintiff's complaint, however, does not allege Greene is liable for excessive force or that he ordered Hawkins to attack Plaintiff; instead, it repeatedly asserts Greene is liable for exhibiting deliberate indifference and failing to protect Plaintiff. *See, e.g.*, ECF Doc. 1 at 3 (describing what constitutional rights Greene allegedly violated as "8th and 14th Amendment(s) for deliberate indifference and failure to protect claims"). And in the Eleventh Circuit, a plaintiff may not amend their complaint in a response to a motion for summary judgment. *See Gilmour v. Gates, McDonald & Co.*, 382 F.3d 1312, 1314-15 (11th Cir. 2004) (noting: (1) the "liberal pleading standard for civil complaints under Federal Rule of Civil Procedure 8(a) … does not afford plaintiffs with an opportunity to raise new claims at the summary judgment stage"; (2) "[a] plaintiff may not amend her complaint through argument in a brief opposing summary judgment"; and (3) "[l]iberal pleading does not require that, at the

Case No. 3:22cv3003-LC-HTC

summary judgment stage, defendants must infer all possible claims that could arise out of facts set forth in the complaint") (citation omitted).

Furthermore, Plaintiff has not presented any evidence that Greene affirmatively directed Hawkins to attack him; the evidence indicates Hawkins disliked Plaintiff and had his own reasons for harming Plaintiff.  Indeed, Hawkins threatened Plaintiff on August 26, before Greene is alleged to have had any interaction with Hawkins.  Thus, consistent with the framing in Plaintiff's complaint, Plaintiff's claims should be evaluated solely under the deliberate indifference standard applicable to failure to protect and failure to intervene claims.

Accordingly, it is RECOMMENDED:

1. That Defendant's motion for summary judgment, ECF Doc. 47, be DENIED as to Plaintiff's failure to protect claim, and GRANTED as to Plaintiff's failure to intervene claim.

2. That this matter be referred to the undersigned for further pretrial proceedings on Plaintiff's individual capacity Eighth Amendment failure to protect claim against Defendant Greene.

At Pensacola, Florida, this 16th day of August, 2023.

/s/ Hope Thai Cannon
**HOPE THAI CANNON**
**UNITED STATES MAGISTRATE JUDGE**

## NOTICE TO THE PARTIES

Objections to these proposed findings and recommendations must be filed within **fourteen (14) days** of the date of the Report and Recommendation. <u>Any different deadline that may appear on the electronic docket is for the court's internal use only and does not control.</u> An objecting party must serve a copy of its objections upon all other parties. A party who fails to object to the magistrate judge's findings or recommendations contained in a report and recommendation waives the right to challenge on appeal the district court's order based on the unobjected-to factual and legal conclusions. *See* 11th Cir. Rule 3-1.